UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA ELROD, as Special Administrator of the Estate of KENNETH ELROD, Deceased,<br>        Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, and OFFICER EDWARD YERKE #1105, Individually,<br>        Defendants. | Case No. 06 C 2505<br><br>Judge Mark Filip<br>Magistrate Judge Geraldine Soat Brown |
| CHRISTINA CENTERA, on her own behalf and as Administrator for the Estate of DEMETRI CENTERA, Deceased,<br>        Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, and Chicago Police Officer EDWARD P. YERKE,<br>        Defendants. | Case No. 07 C 203 |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, Magistrate Judge

      Plaintiff Maria Elrod, as administrator of the estate of Kenneth Elrod, and plaintiff Cristina Centera, on her own behalf and as administrator of the estate of Demetri Centera (collectively, "Plaintiffs") filed separate complaints pursuant to 42 U.S.C. § 1983 against defendants City of Chicago ("the City") and individual police officer Edward Yerke. The lawsuits allege that on the same night, April 7, 2006, Yerke beat up Kenneth Elrod and shot and killed Demetri Centera. (Centera Comp. ¶¶ 6-8; Elrod Compl. ¶¶ 5-8.) Centera's lawsuit was reassigned to District Judge Filip as related to Elrod's. [Dkt 42.] In addition to claims under state law, both Plaintiffs bring §

1983 claims of excessive force against Yerke, and claims against the City pursuant to *Monell v. Department of Social Servs. of City of New York*, 436 U.S. 658 (1978), alleging that certain customs, policies, and practices of the City caused the alleged constitutional violations.

Presently before the court is Defendants' Motion to Bifurcate § 1983 Claims and to Stay Discovery and Trial On Those Claims ("Defs' Mot.") [dkt 43], which the District Judge referred to this court for decision. [Dkt 45.][1] The City has offered to stipulate to the entry of judgment against it for any compensatory damages awarded to Plaintiffs if any City employee is found to have violated Plaintiffs' constitutional rights as alleged in their Complaints. (Defs.' Mot. Leave Cite Suppl. Auth., Ex. B, Stip. ¶ 5.) [Dkt 57.]

For the following reasons, Defendants' Motion is granted. Plaintiffs' claim against Yerke under § 1983 and Plaintiffs' state law claims are bifurcated from Plaintiffs' *Monell* claims against the City, and discovery on the *Monell* claims, including expert discovery, is stayed at least until after discovery on Plaintiffs' remaining claims has been completed.

**Discussion**

Fed. R. Civ. P. 42(b) provides, in pertinent part, that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim . . . or of any separate issue or of any number of claims . . . ." District courts have discretion in determining whether to try issues separately pursuant to Rule 42(b). *McLaughlin v. State Farm Mut. Auto Ins. Co.*, 30 F.3d 861, 870 (7th Cir. 1994); *see*

---

[1] A decision regarding bifurcation does not dispose of any claim or defense, and thus, a magistrate judge may "hear and determine" it. 28 U.S.C § 636(b)(1)(A).

*also Medina v. City of Chicago*, 100 F. Supp. 2d 893, 894 (N.D. Ill. 2000) (stating that "[t]here is no question that a district court has the discretion to sever a *Monell* claim against a municipality from claims against individual police officers and stay litigation of the *Monell* claim until the rest of the case is resolved") (citing *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000)).

The issue of whether to bifurcate a *Monell* claim from the discovery and trial of the underlying constitutional tort claim (and the related state law claims) is one that has been addressed by a number of courts in this district. Some judges have exercised their discretion in favor of bifurcating the *Monell* claims from the other claims.[2] Other judges have refused to bifurcate *Monell* claims.[3] Some of the judges denying motions to bifurcate indicated a willingness to revisit the issue again later or deferred discovery on the *Monell* claims until after the completion of fact discovery on the other claims. *See, e.g., Medina*, 100 F. Supp. 2d at 898 (stating intention to revisit issue of bifurcation at later point in the litigation and deferring discovery on *Monell* claim); *Lopez*, 2002 WL 335346 at *3 (deferring discovery on *Monell* claim).

Thus, there is a growing body of precedent in this district for both granting and denying bifurcation in § 1983 cases. Although most of the courts deciding the issue begin their discussions

---

[2]*See, e.g., Myatt v. City of Chicago*, 816 F. Supp. 1259, 1263-64 (N.D. Ill. 1992); *Parker v. Banner*, 479 F. Supp. 2d 827, 834 (N.D. Ill. 2007); *Jones v. City of Chicago*, 1999 WL 160228 at *2-3 (N.D. Ill. Mar. 10, 1999) (Kocoras, J.); *Keys v. City of Harvey*, 1996 WL 34422 at *2-3 (N.D. Ill. Jan. 26, 1996) (Nordberg, J.); *Patterson v. Burge, et al.*, No. 03 C 4433, dkt 410 (Gottschall, J.) (granting bifurcation on reconsideration); *Coffie v. City of Chicago*, No. 05 C 6745, dkt 136 (Holderman, J.); *Booker v. City of Chicago*, No. 04 C 6371, dkt 249 (Keys, M.J.) (Report & Recommendation). *Accord Lopez v. City of Chicago*, No. 01 C 1823, dkt 160 (Der-Yeghiayan, J.) (barring trial of *Monell* claims); *Wawryniuk v. City of Chicago*, No. 03 C 4291, dkt 34 (St. Eve, J.) (barring discovery of *Monell* issues).

[3]*See, e.g., Medina*, 100 F. Supp. 2d at 898; *Nessel v. City of Northlake*, 1994 WL 685508 at *1 (N.D. Ill. Dec. 5, 1994) (Bobrick, M.J.); *Lopez v. City of Chicago*, 2002 WL 335346 at *3 (N.D. Ill. Mar. 1, 2002) (Darrah, J.).

with the same general principles, the outcome of each decision is dependent upon the facts of that particular case. Thus, this opinion will not recite the analyses of the many various cases granting or denying bifurcation, but rather will consider the principles in light of the facts of this case and the parties' arguments.

Here, Defendants argue that bifurcation would expedite the litigation process and promote judicial economy, allowing the City to avoid potentially unnecessary discovery and litigation costs, and protecting Yerke from possible prejudice. (Defs.' Mot. at 2-4.) Plaintiffs respond that bifurcation will decrease efficiency because the same discovery will be needed to prove the *Monell* claims as the other claims and discovery disputes will increase, that bifurcation will result in two trials rather than one, that limiting instructions can be used to cure any prejudice to Yerke, and that there are non-economic benefits such as deterrence that would be lost if bifurcation is ordered. (Pls.' Resp. at 4-7, 9-10, 13.) [Dkt 47, 53.]

### A.   Avoiding a trial of the *Monell* claims.

Defendants' primary argument is that bifurcation should be ordered because a trial on the *Monell* claims will not be necessary, and therefore, discovery on those claims can be dispensed with. In order to assess that argument, it is necessary to review the relationship between the *Monell* claims against the City and the claims against the individual officer, Yerke.

*Monell* held that a local government can be sued under 42 U.S.C. § 1983, but only "when execution of a government's policy or custom . . . inflicts the injury." 436 U.S. at 694. When the local government's failure to train its officers constitutes "deliberate indifference" to a person's rights and causes a deprivation of a person's constitutional rights, the local government is liable to

that person for his injuries. *See, e.g., Canton v. Harris*, 489 U.S. 378, 388-89 (1989). However, "[m]isbehaving employees are responsible for their own conduct[;] 'units of local government are responsible only for their policies rather than misconduct by their workers." *Estate of Sims v. County of Bureau*, \_\_\_\_F.3d _____, 2007 WL 3036752 (7th Cir. 2007)(citations omitted). Thus, to prevail on a *Monell* claim, a plaintiff must go beyond proving that an individual municipal employee violated the plaintiff's constitutional rights. A fundamental issue here is whether the City's proffered Stipulation makes such additional proof, and the related discovery, unnecessary.

To start, if Plaintiffs cannot prove that Yerke violated their constitutional rights, their *Monell* claims against the City will fail as a matter of law, and the litigation will be over without the need for a trial on the *Monell* claims. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (stating that "neither [*Monell*] nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm").

If Plaintiffs prove that Yerke violated their constitutional rights, they are not entitled to recover any *additional* compensatory damages from the City because of their *Monell* claims. *See, e.g., Spanish Action Committee of Chicago v. City of Chicago*, 766 F.2d 315, 321 (7th Cir. 1985). Thus, the City argues, if Plaintiffs win a verdict against Yerke, Plaintiffs may decide as a practical matter that it is not necessary to go forward to try the *Monell* claim. However, although Plaintiffs may not recover any additional damages, if Plaintiffs prove that Yerke's violation of their rights was a result of the City's policy, the City as well as Yerke is liable to Plaintiffs for the damages caused thereby. *Monell*, 436 U.S. at 690, 691-92, 694.

Defendants argue that it is not necessary or efficient to have a trial of all of the additional

issues necessary to prove the *Monell* claims just to obtain a judgment against the City for the same amount as the judgment against Yerke. Under Illinois law, a local government is required to pay tort judgments for compensatory damages for which its employees are liable for acts within the scope of their employment. 745 Ill. Comp. Stat. § 10/9-102. The Illinois statute permits a plaintiff to bring a claim directly against the municipality and obtain a judgment requiring the municipality to pay the amount due to the plaintiff from the officer. *Wilson v. City of Chicago*, 120 F.3d 681, 684-85 (7th Cir. 1997). Thus, if a plaintiff obtains a judgment for compensatory damages against the individual officer, he may recover the amount of the judgment from the municipality with no need to prove his *Monell* claim. *See Patterson*, No. 03 C 4433, dkt 298 at 5; *Medina*, 100 F. Supp. 2d at 895-96 (stating that, "from an economic standpoint, a prevailing plaintiff in a § 1983 excessive force case against police officers in Illinois gets nothing more from suing the municipality under *Monell* than he would get from suing just the officers. . . . As a result, plaintiffs generally choose to forego the more difficult route of seeking to hold the municipality liable under *Monell*"); *Grant v. City of Chicago*, 2006 WL 328265 at *1, 3 (N.D. Ill. Feb. 10, 2006) (Lefkow, J.) (stating that, "[i]n the final analysis, the plaintiff gains nothing in her pocket from a [*Monell*] judgment against the City").[4]

There is no guarantee, however, that the municipality will concede liability under the Illinois statute if a verdict is rendered against an individual officer. The municipality may dispute payment, for instance, by arguing that the plaintiff cannot prove that the police officer was acting within the scope of his employment – a requirement under the Illinois statute. *See* 745 ILCS 10/9-102. Here,

---

[4]The statute does not require the municipality to pay punitive damages that might be assessed against the individual officer, but a municipality cannot be liable for punitive damages on a *Monell* claim, either. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271-72 (1981); *Joan W. v. City of Chicago*, 771 F.2d 1020, 1025 (7th Cir. 1985).

the City has denied that Yerke acted within the scope of his employment with respect to plaintiff Elrod, but admitted that Yerke acted within the scope of his employment with respect to plaintiff Centera. *See Elrod*, No. 06 C 2505, Answer ¶ 4 [dkt 21]; *Centera*, No. 07 C 203, Answer ¶¶ 4, 73, 77 [dkt 16]. If liability under the statute is contested, the plaintiff may be forced to spend significant time litigating the issue, which would delay her ultimate recovery.

Here, the City has offered to stipulate to the entry of judgment against it for any compensatory damages awarded against Yerke or any other City employee as a result of a finding of a constitutional violation as alleged by Plaintiffs. (Mot. Leave Cite Suppl. Auth., Ex. B, Stip.) [Dkt 57.] Thus, if Plaintiffs establish a constitutional injury, the City's Stipulation requires the City to pay any award of compensatory damages without Plaintiffs' proving the *Monell* prerequisites to the City's liability, in other words, without any trial on Plaintiffs' *Monell* claims.

The Stipulation is not an admission of liability that the City's policies or practices caused Plaintiffs' injuries; on the contrary, the City denies in its Stipulation that it "has any 'policies, customs or practices' that cause constitutional deprivation" or that "caused the alleged violations that would give rise to liability under section 1983." (Stip. ¶ 4.) However, significantly, the City is not merely waiving Plaintiffs' need to prove certain elements required in a *Monell* claim, it is agreeing to "entry of judgment against the City for compensatory damages" if the finder of fact finds that "any City employee violated plaintiffs' constitutional rights as alleged in their Complaints." (Defs.' Mot. Leave Cite Suppl. Auth., Ex. B, Stip. ¶ 5.)

The City's submission of similar stipulations has been cited as justifying bifurcation orders in several cases. *See, e.g., Parker,* 479 F. Supp. 2d at 828, 829, 834 (granting bifurcation where city stipulated to paying monetary judgment entered against its employee); *Patterson*, No. 03 C 4433,

dkt 410 (same); *Coffie*, No. 05 C 6745, dkt 136 at 1 (same); *Grant*, 2006 WL 328265 at *1, 3 (barring trial of *Monell* claims where city provided stipulation to entry of judgment against it); *Lopez*, No. 01 C 1823, dkt 160 at 2 (same). Indeed, in at least one case, the judge modified his recommended ruling denying bifurcation based on the City's submission of a clearer, more comprehensive stipulation to judgment against it if the plaintiff were to establish a violation by any City employee. *Booker*, No. 04 C 6371 [dkt 249]. Conversely, in several cases in which the City did not offer a stipulation of judgment against it, its motion to bifurcate was denied. *See, e.g., Lopez*, 2002 WL 335346 at *3 (denying bifurcation and noting that the city had not offered to stipulate to a judgment against it for compensatory damages awarded to the individual officers); *Medina*, 100 F. Supp. 2d at 897-98 (same); *Nessel*, 1994 WL 685508 at *2.

In some cases the assertion of a defense of qualified immunity by the individual officer raises the potential scenario in which a plaintiff who proves a constitutional violation loses his claim against the individual defendant because of the defense of qualified immunity, but could prevail against the City under *Monell* by proving that the violation was the result of a municipal policy or custom. *See Owen v. City of Independence*, 445 U.S. 622, 625 (1980); *Medina*, 100 F. Supp. 2d at 896. In such a case, unless the City stipulates to pay damages notwithstanding the individual officer's qualified immunity, a trial on the City's *Monell* liability would not be avoided, and bifurcation would result in the possibility of two trials with at least some duplicative evidence.

Although Yerke has pleaded the defense of qualified immunity in this case (Def. Yerke's Answer at 12 [dkt 25]), the likelihood of a defendant prevailing on that defense in the context of an excessive force claim has not been a persuasive argument against bifurcation. *See Grant*, 2006 WL 328265 at *3 (citation omitted) (stating that court was "at a loss to imagine how the scenario could

occur in this case, where the facts alleged clearly state a claim for excessive force, and the right to be free from excessive force is clearly established"); *Bailey v. City of Chicago*, No. 07 C 204, dkt 41 at 2 (April 18, 2007) (Conlon, J.) (finding plaintiff's argument that officers might prevail on qualified immunity to be "speculative, and unpersuasive in light of the other factors supporting bifurcation"); *Parker*, 479 F. Supp. 2d at 828, 833 (finding that a qualified immunity defense was a "remote possibility, given the allegations in this complaint," which involved a police officer's misconduct).[5]

In summary, there is no doubt that including the *Monell* claims pleaded by Plaintiffs would add to the length and complexity of the trials of this case. If the *Monell* claims are omitted, the trial of the remaining claims "is likely to be shorter, and perhaps significantly shorter, than a trial also involving *Monell* claims." *Medina*, 100 F. Supp. 2d at 895; *see also Myatt*, 816 F. Supp. at 1264 (noting plaintiff's acknowledgment that proof of a "code of silence" policy relating to *Monell* claims would take one to two additional trial days). To the extent that a successful *Monell* claim serves to ensure payment of the damages to Plaintiffs, that goal is achieved by the Stipulation. Thus, bifurcation under the condition of the proposed Stipulation would promote the goals of judicial economy, expediency, and convenience.

---

[5]Whether the City's Stipulation here, in which the City has agreed to the entry of judgment against it for compensatory damages if the jury were to find that "any City employee" violated Plaintiffs' constitutional rights, would require the payment of compensatory damages even if Yerke avoids individual liability because of qualified immunity need not be decided at this time. However, in one case, the addition of the language "any city employee" to the proposed stipulation persuaded the Judge to modify his previous his previous recommended ruling denying bifurcation. *See Booker*, No. 04 C 6371, dkt 249 at 1-2 (recommending granting renewed motion to bifurcate where City "sweetened the pot" by offering to stipulate to judgment against it in the event plaintiff established a constitutional violation by *any City employee*, and not just the named individual defendants).

B. **Deferring discovery relating to *Monell* issues.**

Discovery relating to a *Monell* claim regarding a municipality's policies and practices "can add significant time, effort, and complications to the discovery process." *Medina*, 100 F. Supp. 2d at 895. Many courts have referred to that fact in granting motions to bifurcate. *See, e.g., Jones*, 1999 WL 160228 at *3 (stating that bifurcating can avoid the potential for "extremely costly and burdensome, yet ultimately unnecessary, discovery"); *Parker* at 834 (stating that *Monell* discovery "may inflict needless, wasteful expense of time and money upon the parties and the court"); *Bailey*, No. 07 C 204, dkt 41, at 2 (ordering bifurcation where *Monell* discovery was likely to be extensive and time consuming yet probably unnecessary); *Patterson*, No. 03 C 4433, dkt 410 (determining that bifurcating would be more efficient based on fact that plaintiff identified numerous witnesses who would testify solely on issue of *Monell* liability, and that the need for expert discovery on municipal policy issues would be eliminated).

In this case, the parties dispute the extent to which the discovery process can be abbreviated by bifurcation. Citing Plaintiffs' discovery requests relating to the *Monell* claims, Defendants assert that the discovery and litigation costs involved with Plaintiffs' policy claims alone consist of producing "thousands of documents" from the Chicago Police Department, the City Council and its committees, and the Police Board, as well as numerous Rule 30(b)(6) witnesses for deposition, and retaining and defending expert witnesses and busy public officials, including Aldermen. (Defs.' Mot. at 3; Defs.' Reply at 3.)[6] Plaintiffs counter that much of the *Monell* discovery has in fact

---

[6] Defendants cite Plaintiff Centera's First Set of Requests for Production to the City, especially Nos. 36-42, Centera's First Set of Interrogatories to the City, especially Nos. 11-15, and Elrod's First Set of Requests for Production to the City, especially Nos. 9-11 in support of

already been completed because it overlaps with the discovery in four other shooting cases being litigated by Plaintiffs' counsel against the City, and that "the primary discovery needed here is only "to fill in the gap with the missing files to catch the documents up to this April 2006 shooting." (Pls.' Resp. at 2.) They claim that "[w]hat is really at stake is around a half-dozen extra depositions and several boxes of documents." (Pls.' Resp. at 9.)

Plaintiffs' argument is hard to reconcile with the scope of Plaintiffs' discovery requests.[7] A similar argument was raised by the plaintiff in *Bailey*, No. 07 C 204 [dkt 41], and rejected by the court. In that case, the plaintiff also claimed that the discovery burden associated with the *Monell* issues would be modest and would require only "a half-dozen extra depositions and several boxes of documents." *Id.* at 2. The court found the plaintiff's estimate of the discovery burden to be unrealistic considering her discovery requests to the City, which included a request for "[a]ll documents relating to any discharge of a weapon by any Chicago Police Officer for the five years preceding May 2, 2006, including all Complaint Register files and U-files." *Id*. Plaintiffs in this case served an identical request on the City, which is just part of the *Monell* discovery sought.

---

their argument. (Defs.' Mot. at 3 n. 2.)

[7] Plaintiffs' requests include, for example, "All Documents relating to all changes to the Department's policies, practices and training on the issues of the use of force, including deadly force, since 1999"; and "All Documents relating to Chicago police shootings that have been presented or communicated to the Chicago City Council, the Council's Fire and Police Board and/or any member thereof including but not limited to any communications, studies, audits, assessments, evaluations, statistics, memorandums and reports." (Defs.' Mot., Ex. B, Centera's Req. to Prod. Nos. 38, 41.) Interrogatories propounded on the City relating to the *Monell* issues in this case include: "[I]dentify and describe each and every instance in the ten years prior to the events at issue in this matter in which the policymakers . . . have undertaken to review, uncover, or determine the prevalence of the use of deadly force . . . ."; and "Describe all action taken by any policymaker to prevent police shootings. . . ." (*Id.*, Centera's First Set of Interrogs. Nos. 11, 12.)

(Defs.' Mot., Ex. B, Centera's Req. to Prod. No. 37.) If Plaintiffs were confident that all they need is "to fill in the gap" of other evidence, there would be no need for requests of the breadth served here. Furthermore, whether the discovery produced in other, unrelated cases would be admissible in the trial of these cases is not certain. Thus, discovery on the *Monell* claims is likely to be substantial, notwithstanding Plaintiffs' attempts to minimize it.

Of greater force is Plaintiffs' argument that the discovery on the *Monell* claims is also discovery that is relevant to the remaining claims. (Pl.'s Resp. at 4-5.) For example, they argue that evidence regarding other shooting investigations (such as the manner in which shooting investigations are conducted) is relevant to both the underlying claims and the *Monell* claims, to show that the investigations are conducted in a manner so as to shield the officers, which could help impeach or undermine statements made by supposedly unbiased investigators. (Pls.' Resp. at 4-5, 7.) They suggest that bifurcation will result in discovery disputes regarding "what types of discovery fall on which side of the artificial line," ultimately slowing down discovery. (Pls.' Resp. at 2, 7-8) That concern has been expressed by other courts. *See Jones,* 1999 WL 160228 at *3; *Myatt*, 816 F. Supp. at 1264; *Patterson*, No. 03 C 4433, dkt 298 at 4 (denying bifurcation, although granting bifurcation in later decision).

Whether the *Monell* claims so overlap with the remaining claims as to undermine any efficiencies to be derived from bifurcation of discovery is a decision that must be made on a case-by-case basis. After reviewing the claims in this case, the court is not persuaded that proof of the § 1983 claim against Yerke and state law claims would include substantially all of the evidence that would need to be presented to prove the *Monell* claims. Nor is it persuaded that distinguishing the *Monell* discovery from the other discovery will be unusually problematic in this case. Plaintiffs'

excessive force claims each involve a single incident relating to Yerke's actions on the one night in question. There are no other defendants, no other allegations of constitutional violation except excessive force. Those facts suggests that it is more efficient to bifurcate the *Monell* claims and to stay *Monell* discovery until at least after discovery regarding the underlying claims is completed (and perhaps ultimately bypassing that discovery altogether). *See, e.g.*, *Parker,* 479 F. Supp. 2d at 828, 834 (granting bifurcation and noting that "[t]he commonplace nature of the case – an allegation of police officer's misconduct – is significant").[8]

Discovery in this case can proceed on the claim against Yerke and related state law claims, while deferring discovery relating to the *Monell* claims. Notably, even Defendants acknowledge that discovery on the claim against Yerke involves certain areas of municipal practice. (Defs.' Reply at 4.) In the event that, in fact, the expected economies and efficiencies do not develop, the issue of bifurcation can be revisited.

**C.    Potential prejudice from trial of both *Monell* and individual liability.**

Defendants argue that bifurcation of the trial will protect Yerke from the possible prejudice of introducing at trial evidence regarding police shootings in which Yerke was not involved, or other evidence regarding the City's policies for addressing police officer misconduct, such as how the Police Department investigates and disciplines its officers after shooting incidents. (Defs.' Reply at 7-8.) While some courts have considered the potential prejudice to the individual defendant in

---

[8] In contrast, *Hobley v. Burge*, No. 03 C 3678, cited by Plaintiffs, involved allegations of police brutality, conspiracy, and fabrication of evidence involving a number of individual defendants as part of a pattern extending over a substantial period of time. In that case, the discovery relating to that pattern would be difficult to distinguish from discovery on the *Monell* claims.

-13-

granting motions to bifurcate, *see, e.g., Myatt*, 816 F. Supp. at 1264 n. 8; *Jones,* 1999 WL 160228 at *3, other courts have noted that such prejudice can be cured by limiting instructions. *See, e.g.,Medina*, 100 F. Supp. 2d at 897 (stating that "[t]hough the court is cognizant of the possibility of prejudice to the individual officers if the claims are tried together, our system generally trusts jurors to understand and follow limiting instructions regarding consideration of evidence against some defendants and not others"); *Nessel*, 1994 WL 685508 at *2.

The City's argument could, in theory, apply to virtually every case that involved both individual liability and *Monell* policy claims, because the nature of a *Monell* claim requires evidence that goes beyond the actions of the individual defendant. Generally, the issue of avoiding prejudice at trial is better addressed by application of the Rules of Evidence, rulings in limine, and limiting instructions. This argument is not, in itself, a persuasive reason for bifurcation.

**D.      Accountability for, and deterrence of, civil rights violations.**

Plaintiffs raise one final argument to be considered, namely, that there are non-economic benefits to suing a municipality which may be less likely to occur when a plaintiff pursues only the individual officer in a § 1983 case. Plaintiffs here intend to prove that the City's system for investigating and disciplining shootings is so "thoroughly broken" that officers can act "virtually guaranteed of impunity, a climate that encourages the sorts of abuses alleged here." (Pls.' Resp. at 13.) Plaintiffs argue that the goal of deterrence will be lost if they cannot pursue their *Monell* claims against the City, and argue that it is important for them to hold all parties accountable, especially the City. (Pls.' Resp. at 11-12.)

There is no doubt that holding municipalities to account for constitutional violations resulting

from the municipality's policies, customs or practices is an important goal of § 1983. *See Owen,* 445 U.S. at 650. Notably, in *Owen*, the Supreme Court referred to "[a] damages remedy against the offending party" as "a vital component of any scheme for vindicating cherished constitutional guarantees . . ." *Id*. at 651. In its Stipulation here, the City agrees to be liable for any constitutional violation committed by its employees, even without proof that the violation is the result of a policy, custom or practice.

Plaintiffs argue that more than mere monetary liability is necessary to deter unconstitutional acts that have their root in the City's policies, customs and practices. Several courts have opined that a judgment against a police officer (even one paid for by the municipality) may be less likely to prompt the municipality to act to prevent future violations than a judgment naming the municipality itself as responsible based on its policies and customs.[9] Other courts conclude that an obligation to pay the judgment is sufficient deterrent.[10]

It is important to remember that bifurcation does not mean dismissal of the *Monell* claims. Plaintiffs retain the right to discover and try their *Monell* claims. Bifurcation in this case means structuring the process to facilitate a more economical and efficient process of discovering the merits

---

[9]*See, e.g.*, *Grant,* 2006 WL 328265 at *3 (granting motion to bar trial of *Monell* claim but acknowledging that "unconstitutional municipal conduct is more likely to elude justice as a result of decisions like this"); *Lopez*, 2002 WL 335346 at *3 (stating that a finding of liability against individual employees, as compared to a finding of liability against a municipality, "may decrease the likelihood of the municipality's acting to prevent future violations when that municipality is, or is not, named in a judgment"); *Medina*, 100 F. Supp. 2d at 896.

[10]*See Lopez*, No. 01 C 1823, dkt 160 at 2 (indicating that deterrent effect will be felt where city consented through stipulation to have judgment entered against it without proof of *Monell* claims); *Wawryniuk*, No. 03 C 4291, dkt 34 at 2 (rejecting plaintiff's argument that barring *Monell* discovery will undermine § 1983's objective of deterrence because city's stipulation will enable plaintiff to obtain a judgement against the city itself).

of the underlying § 1983 claim, at the conclusion of which the parties will have the opportunity to consider possible settlement or go to trial on the underlying claim, without having incurred the expense of discovery relating to the *Monell* claims. If settlement is not reached and the trial results in a verdict for one or both of the Plaintiffs, the Plaintiffs reserve their right to discover and try the *Monell* claims. The City's Stipulation does not eliminate that right.

**Conclusion**

For the foregoing reasons, Defendants' Motion to Bifurcate § 1983 Claims and to Stay Discovery and Trial On Those Claims is granted. Discovery on Plaintiffs' *Monell* claims, including expert discovery, is stayed until after discovery on Plaintiffs' remaining claims has been completed. A status hearing before this court is set for November 6, 2007 at 9:45 a.m..

**IT IS SO ORDERED.**

*[signature]*
**GERALDINE SOAT BROWN**
**United States Magistrate Judge**

November 1, 2007